

# NUMBER 13-03-171-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ROBERT TWIST,** **Appellant,**

**v.**

**ROEL "ROBIE" FLORES, ET AL.,** **Appellees.**

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Vela**
**Memorandum Opinion by Justice Vela**

Appellant, Robert Twist, appeals from trial court orders dismissing his case for want of jurisdiction, denying his motion to reinstate, and granting a motion for summary judgment in favor of one of the appellees. In multiple issues, Twist claims that the trial court abused its discretion by: (1) dismissing the case for want of prosecution because a

bankruptcy stay as to one appellee was applicable to the other appellees because the issues were so intertwined; (2) dismissing the case because all facts and circumstances showed he exercised due diligence; (3) refusing to reinstate the case; and (4) failing to make findings of fact. Twist also urges that the trial court erred by granting one of the appellee's motion for summary judgment. We affirm.

## I. BACKGROUND

On June 18, 1999, Twist filed suit against appellees Roel "Robie" Flores, Maureen Ball, Darlene L. Vale, Brenda Twist Griggs, Victoria Guerra and Manuel Guerra, III, arising from a transfer of money from one of Twist's bank accounts. He alleged that his former wife, Brenda Griggs, wire transferred $175,000 from his account to a bank in Corsicana and then filed a divorce action. In this case and others that have previously been before this Court, Twist claims that the funds were his separate property as the result of a personal injury settlement.[1]

Brenda hired Vale to represent her in the divorce action. Twist hired Flores and Ball to represent him. They ceased representing him in June 1996, but Twist claims they actively concealed facts from him that would have assisted him in having those funds returned.

---

[1] *See Twist v. McAllen Nat'l Bank*, 294 S.W.3d 255 (Tex. App.–Corpus Christi 2009, no pet.); *Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351 (Tex. App.–Corpus Christi 2007, orig. proceeding); *Twist v. Garcia*, No. 13-05-00321-CV, 2007 WL 2442363 (Tex. App.–Corpus Christi Aug. 30, 2007, no pet.) (mem. op.); *In re Twist*, No. 13-07-00402-CV, 2007 WL 2052316 (Tex. App.–Corpus Christi Apr. 18, 2007, orig. proceeding); *Twist v. McAllen Nat'l Bank*, No. 13-04-00613-CV, 2005 WL 1572738 (Tex. App.–Corpus Christi July 7, 2005, no pet.) (mem. op.) (per curiam); *In re Twist*, No. 13-04-00660-CV, 2004 WL 2985216 (Tex. App.–Corpus Christi Dec. 21, 2004, orig. proceeding); *Twist v. Twist*, No. 13-97-00717-CV, 1999 WL 34973347 (Tex. App.–Corpus Christi Jan. 28, 1999, no pet.).
.

Twist claims that in 1977 he employed Victoria and Manuel Guerra to represent him. He argues that he was persuaded to enter into a Rule 11 agreement, whereby his funds were to be returned. He urges that the Guerras, Vale, and Brenda conspired to defraud him of the funds allegedly transferred by Brenda. Twist requested a jury trial and filed a motion for trial setting.

On April 28, 2000, the trial court set the motion for a hearing to be held on June 7, 2000. No trial date was set at the hearing on that date. On June 7, 2000, appellee Vale filed a motion for summary judgment, primarily urging that she owed no duty to Twist because she was representing Brenda in the divorce and was, therefore, adverse to him. The trial court granted Vale's summary judgment on December 27, 2000. Thereafter, on January 26, 2001, Twist filed a "Motion to Reform Order granting Motion for Summary Judgment to Darlene Vale." No other action on this case was taken for two years, until the Guerra appellees filed their motion to dismiss for want of prosecution pursuant to Texas Rule of Civil Procedure 165 and the inherent powers of a court to manage its docket. *See* TEX. R. CIV. P. 165. Twist filed a response on February 5, 2003.

The trial court held a hearing on the motion to dismiss on February 5, 2003. At that hearing, Twist called three witnesses, including himself. The first, Magda Solis, an employee with the Hidalgo County trust fund department, testified that Twist asked her many times about the status of a trial setting and she informed him that there was no setting. Solis said that she is not the person to go to for a trial setting. She testified that she told Twist that he would need to get a docket control conference and go to the court coordinator or the judge to get a trial setting. Eliseo Borrego, a deputy clerk and records custodian, testified that Twist had come into his office several times and would look at the

3

file and the docket sheet. Borrego testified that he was not the one to go to for trial settings and that the same procedure for setting cases for trial had been followed for the entire thirteen years that he had been employed by the courts. He testified that he told Twist that Twist would have to take up issues regarding a trial setting with the court coordinator.

Twist testified that he filed a motion for trial setting on April 18, 2000. He stated that he made several trips to the coordinator's office after that. He also said he telephoned the court on a number of occasions. He said the coordinator informed him that he would get written notice when the case was set for trial. Twist stated that he had attempted to prepare for trial by reading everything and speaking to potential counsel. He claimed that he was ready to go to trial. But, he agreed that in 2003, there was nothing done to actively pursue the case, except an affidavit that had been filed when Twist obtained counsel and he did not dispute that there was no request for trial setting in 2002. Twist said that he had not made a written request for trial setting after April 18, 2000, because he didn't think he needed to. Twist admitted that he did not make an inquiry about a trial setting in for all of 2001 and 2002, because he did not want to make a nuisance of himself and he could get the same information from the docket sheet.

Another hearing was held on March 10, 2003. At that hearing, Femia Rodriguez, the former court coordinator for the 93rd District Court, testified that Twist would call and come by the court. She would inform him that there was no setting on those occasions. Joel Espinosa, the coordinator for the 93rd District Court since 2001, also testified that he had looked through the file and had seen no activity since June 2000. According to Espinosa, other than a single docket control conference, the record did not reflect any other request by Twist to actively prosecute and request a trial setting.

4

## II. Dismissal for Want of Prosecution

### A. Standard of Review and Applicable Law

By issues two, three, and five, Twist claims that the trial court abused its discretion in dismissing his case for want of prosecution. He claims that the evidence showed that he was utilizing due diligence and had been deprived of a meaningful opportunity to be heard.

We review a dismissal for want of prosecution under a clear abuse of discretion standard. *MacGregor v. Rich,* 941 S.W.2d 74, 75 (Tex. 1997). A trial court abuses its discretion by acting "without reference to any guiding rules or principles" or by acting arbitrarily or unreasonably. *E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549, 558 (Tex. 1995); *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990). A trial court derives its authority to dismiss for want of prosecution from two sources: (1) rule of civil procedure 165a, and (2) the trial court's inherent power. *Garcia v. Barreiro*, 115 S.W.3d 271, 275 (Tex. App.–Corpus Christi 2003, no pet.) (citing *Villarreal v. San Antonio Truck & Equip.,* 994 S.W.2d 628, 630 (Tex.1999)); *see* Tex. R. Civ. P. 165a. Under Rule 165a, the trial court may dismiss when any party seeking affirmative relief fails to appear for a hearing or trial when that party had notice of such hearing or trial. *See* Tex. R. Civ. P. 165a(1); *see also Barreiro,* 115 S.W.3d at 275. Additionally, Rule 165a empowers the trial court to dismiss a case when it is "not disposed of within the time standards promulgated by the Supreme Court." *See* Tex. R. Civ. P. 165a(2); *see also Barreiro,* 115 S.W.3d at 275. When a plaintiff fails to prosecute a case with due diligence, the trial court may dismiss the case under its inherent authority. *Barreiro,* 115 S.W.3d at 275 (citing

5

*Villarreal,* 994 S.W.2d at 630). "[A] party must be provided with notice and an opportunity to be heard before a court may dismiss a case for want of prosecution under either rule 165a or the court's inherent authority." *Id.* At the dismissal hearing, the court shall dismiss for want of prosecution unless there is good cause for the case to be maintained on the docket. TEX. R. CIV. P. 165a(1).

In determining whether due diligence exists, the trial court may consider the entire history of the case, including: (1) the length of time the case was on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) the existence of reasonable excuse for delay. *Polk v. Sw. Crossing Homeowners Ass'n,* 165 S.W.3d 89, 97 (Tex. App.–Houston [14th Dist.] 2005, pet. denied); *Christian v. Christian,* 985 S.W.2d 513, 514-15 (Tex. App.–San Antonio 1998, no pet.); *see Allen v. Rushing,* 129 S.W.3d 226, 231 (Tex. App.–Texarkana 2004, no pet.) (reviewing as factors in a diligence determination (1) evidence of attempting to serve the defendants, (2) the amount of time the suit was on file, and (3) whether motion to reinstate had been filed). Due diligence is generally a question of fact. *Christian*, 985 S.W.2d at 515 (citing *MacGregor,* 941 S.W.2d at 75-76). Furthermore, a pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure. *Green v. Kaposta,* 152 S.W.3d 839, 841 (Tex. App.–Dallas 2005, no pet.).

**B. Analysis**

The record shows that Twist made a single request for a trial setting and attended a docket control conference. He testified that he would regularly ask the district clerk personnel to determine if the case had been set for trial. He understood that it was not.

6

His testimony strongly suggested that he believed he did not need to do anything else and eventually his case would be set for trial. Practicing attorneys understand that trial settings are obtained from the court coordinator. Although Twist was not an attorney, he embarked on a case pro se and is held to the same standard. Litigants are required to act as ordinary prudent persons under the same or similar circumstances. *Manning v. North*, 82 S.W.3d 706, 713 (Tex. App.–Amarillo 2002, no pet.). Based upon the evidence presented here, the trial court could have, in its discretion, properly concluded that Twist did not act reasonably in taking no action to determine why his case had not been set for trial. He also performed no discovery during that period of time. From the trial court's perspective, it could have reasonably appeared that Twist did nothing to bring his case to trial for two years other than check with the district clerk personnel and unsuccessfully attempt to get an attorney to represent him. Under the circumstances, we cannot conclude that the trial court abused its discretion. Further, the trial court allowed Twist to fully present his arguments concerning why his case should not be dismissed at evidentiary hearings where he was represented. Twist's second, third and fifth issues are overruled.

## C. Failure to Make Findings of Fact and Conclusions of Law

By his fourth issue, Twist argues that the trial court erred in failing to making findings of fact and conclusions of law. On February 26, 2003, Twist filed his request for findings of fact and conclusions of law. On March 19, 2003, he filed his notice of past due findings.

In *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440, 443 (Tex. 1997), the court opined that a request for findings has no purpose and should not be made in circumstances where there is a dismissal for want of prosecution without an evidentiary

7

hearing. Here, however, there was an evidentiary hearing, so, if properly and timely requested, findings would have been proper, although under *IKB Industries*, may not have been required. In *IKB Industries,* the court stated that the purpose of rule 296 is to give a party the right to findings of fact after an adjudication on the merits. *Id.* at 442. There, the court opined: "[i]n other cases findings and conclusions are proper, but a party is not entitled to them." *Id.* An order dismissing a case for want of jurisdiction is not an adjudication of the right of the parties, rather it simply puts the parties in the same position they were in prior to filing suit. *Dick Poe Motors, Inc. v. DaimlerChrylser Corp.*, 169 S.W.3d 478, 485 (Tex. App.–El Paso 2005, no pet.). The trial court was not required to file findings of fact because there was no adjudication on the merits.

However, even if findings of fact were required here, the result would be the same. Generally, when properly and timely requested, a trial court has a mandatory duty to file findings of fact and conclusions of law. *Glass v. Williamson*, 137 S.W.3d 114, 117-18 (Tex. App.–Houston [1st Dist.] 2004, no pet.) (citing *Cherne Indus. v. Magallenes*, 763 S.W.2d 768, 772 (Tex. 1989)). Harm is presumed unless the contrary appears on the face of the record. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). The test for harm is whether a party must try to guess the reasons the trial court ruled against it. *See Carr v. Hubbard*, 664 S.W 2d 151,153 (Tex. App.–Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Here, the trial court held a lengthy hearing on the motion to dismiss, allowed Twist to put on witnesses, and informed Twist that he failed to follow the rules and failed to follow through. The court said there was no miscarriage of justice. The trial court determined that good cause was lacking.

Here, Twist did not have to guess why his case had been dismissed. The trial court felt the case had not been prosecuted with due diligence. Under the circumstances presented here, if findings of fact had been required, Twist was not harmed by the trial court's failure to file them. We overrule issue four.

## III. FAILURE TO ABATE

Twist argues in his first issue that the trial court erred by not abating the case once it became aware that Brenda had filed for bankruptcy. Twist prefaces his argument by stating that this Court's decision, in *Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351 (Tex. App.–Corpus Christi 2007, orig. proceeding), "at first blush seems to be dispositive of this issue." We agree with Twist's assessment to the extent that it is dispositive. In that case, we held that a suit filed against a debtor already under the protection of a bankruptcy stay is a nullity. *Id*. at 363. A trial court does not acquire jurisdiction over an action commenced during an automatic stay. *Id*. Brenda filed for bankruptcy on March 1, 1999. Twist filed the causes of action at issue here, including the action against Brenda, on June 18, 1999, after the bankruptcy was filed and the stay was in force. Therefore, using the same reasoning set forth in our earlier opinion, as we are bound by our own precedent, she was never a party to the action in the trial court. *See Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex. 1995).

A bankruptcy stay protects the debtor from the commencement or continuation of an action against them. Stays pursuant to 11 U.S.C. § 362 are limited to the debtor and do not encompass non-bankrupt co-defendants. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 604 (Tex. 2000). Here, the claims against the non-debtor appellees are independent

9

causes of action and would not be dependent upon the outcome of Twist's action against Brenda if she had been a proper party to the trial court action. We overrule issue one.

## IV. SUMMARY JUDGMENT

By his sixth issue, Twist urges that the trial court erred in granting Vale's motion for summary judgment because there were genuine issues of material fact regarding fraud and conspiracy to defraud that do not require privity of contract to enable Twist to have a viable cause of action against her.

### A. Standard of Review

We review a trial court's denial of a traditional motion for summary judgment under a de novo standard of review. *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 n. 7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 290 n. 137 (Tex. 2004)); *Alaniz v. Hoyt,* 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.). To obtain relief by a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *Mowbray v. Avery,* 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). To meet this burden, a defendant must either conclusively negate at least one of the essential elements of a cause of action or conclusively establish each element of an affirmative defense. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Tex. Monthly, Inc. v. Transam. Natural Gas Corp.,* 7 S.W.3d 801, 805 (Tex. App.–Houston [1st Dist.] 1999, no pet.).

In deciding whether there is a disputed fact issue that precludes summary judgment, evidence favorable to the non-movant will be taken as true. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985)). Moreover, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id*. (citing *Nixon,* 690 S.W.2d at 549).

## B.  The Motion

Vale moved for summary judgment on the basis that she owed no duty to Twist. In support of her summary judgment, Vale produced an affidavit wherein she stated that she had only an adversarial relationship with Twist since she had been hired to represent his former wife in a divorce action. She also submitted the petition she filed on Brenda's behalf. Twist responded to the motion by urging that he has a negligent misrepresentation claim against Vale, as well as claims for fraud, fraudulent inducement, and intentional misconduct.

## C.  Analysis

There is no cause of action against opposing counsel for representing a client in a judicial proceeding. *See White v. Bayless,* 32 S.W.3d 271, 276 (Tex. App.–San Antonio 2000, no pet.); *Mitchell v. Chapman* 10 S.W.3d 810, 812 (Tex. App.–Dallas 2000, pet. denied); *Bradt v. West,* 892 S.W.2d 56, 71-72 (Tex. App.–Houston [1st Dist.] 1994, writ denied).

Under Texas law, attorneys cannot be held liable for wrongful litigation conduct. *See Bradt,* 892 S.W.2d at 71-72. A contrary policy "would dilute the vigor with which Texas attorneys represent their clients" and "would not be in the best interests of justice." *Id.* at

11

Any other rule would act as a severe and crippling deterrent to the ends of justice because a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is entitled.

There are exceptions to the bar which arise only when an attorney has engaged in negligent misrepresentation or an attorney may be liable for conversion or fraud if the attorney "personally steals goods or tells lies on a client's behalf." *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008); *see McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 794 (Tex. 1999). Here, the summary judgment evidence established that Vale owed Twist no duty, and Twist has presented no contrary evidence to raise a fact issue. We overrule Twist's sixth issue.

## V. Conclusion

We affirm the judgment of the trial court.

ROSE VELA
Justice

Delivered and filed the
13th day of May, 2010.